IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherie Arias,                           :
                                        :
                    Petitioner          :
                                        :
          v.                            : No. 251 C.D. 2020
                                        : Submitted: January 22, 2021
Unemployment Compensation               :
Board of Review,                        :
                                        :
                    Respondent          :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  February 10, 2022


          Sherie Arias (Claimant), *pro se*, petitions for review of an order of the
Unemployment Compensation Board of Review (Board) that affirmed a referee's
decision and held that Claimant was ineligible for unemployment compensation
(UC) benefits pursuant to Section 402(e) of the Unemployment Compensation Law
(Law),[1] relating to willful misconduct.  On appeal, Claimant contends that she was
never informed that her dismissal was for lying to her supervisor.  Moreover, she
claims that she did not lie.  For the following reasons, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(e) (providing that an employee shall be ineligible for compensation when her separation from
employment is due to willful misconduct connected with her work).

Claimant was employed full-time as an intake caseworker for Sargent's Personnel Agency, Inc. (Employer), a temporary employment agency, from April 6, 2017, through June 26, 2019, earning $19.00 per hour. Referee's 12/10/2019 Decision, Findings of Fact (F.F.) Nos. 1-2. Employer assigned Claimant to work at Liberty Healthcare Corporation (Liberty), which she did until June 26, 2019, when she was terminated based on her failure to follow Liberty's policies and procedures and for being untruthful regarding missing documentation. *Id.*, F.F. No. 13. Claimant applied for UC benefits on June 27, 2019. Certified Record (C.R.) at 5. On October 1, 2019, the Altoona UC Service Center found Claimant not ineligible for benefits under Section 402(e) of the Law because, although she was discharged due to unsatisfactory work performance, Employer failed to provide any information showing that Claimant was not working to the best of her ability or that she committed any disqualifying willful misconduct. C.R. at 45.

On October 15, 2019, Employer appealed the grant of UC benefits, asserting that it provided ample documentation of prior warnings that Liberty had issued to Claimant, thereby demonstrating Claimant's unsatisfactory work performance. C.R. at 49, 51. On December 5, 2019, the referee conducted a hearing on the issue of whether Claimant's discharge was due to willful misconduct. C.R. at 91, 98. Stacey Mitchell (Mitchell), Employer's human resource manager, appeared in person, with counsel, on behalf of Employer. Employer also presented a second witness, Zachary Haines (Haines), Liberty's lead intake caseworker and Claimant's supervisor, who testified by telephone. Claimant appeared *pro se*, via telephone, and testified on her own behalf.

Preliminarily, Claimant testified that Employer had assigned her to work at Liberty. Referee's Hearing Transcript (H.T.) at 6; C.R. at 104. Claimant

stated that on June 26, 2019, Mitchell called Claimant and said that the assignment with Liberty had ended and that Employer did not have any new positions available. H.T. at 5-6; C.R. at 103-04. Claimant testified that neither Liberty nor Employer stated that she was terminated for misconduct. H.T. at 6; C.R. at 104.

Mitchell responded that Claimant was not separated from her employment because the assignment had ended. Rather, Mitchell explained, Claimant received numerous warnings from Liberty for failing to follow protocol and was, ultimately, terminated for misconduct. H.T. at 5-6; C.R. at 103-04. Mitchell stated that Liberty was involved in the decision to discharge Claimant, and that Employer discussed Claimant's misconduct and discharge with Liberty. Mitchell explained that Employer evaluated the reasons why Liberty personnel thought that Claimant's discharge was appropriate in order to determine whether Employer should continue to retain Claimant in its agency and send her on future assignments. H.T. at 7; C.R. at 105. Mitchell further explained that not only did Claimant fail to correctly perform her job and enter necessary information into Liberty's database, but "[Claimant] was [also] untruthful [regarding the] information saying it was placed . . . [in the file,] but in a wrong location, which wasn't correct. And she was given several warnings regarding the need to have this in the proper files . . . because it's very personal information." *Id.* Mitchell then testified that, following her review of documentation from Liberty indicating the above, Employer decided to adopt Liberty's decision regarding Claimant's discharge. *Id.*

Haines testified that he was Claimant's direct supervisor at Liberty, he previously addressed disciplinary matters with Claimant, and he was familiar with the reasons for Claimant's discharge. H.T. at 8; C.R. at 106. He noted Claimant's

repeated failure to make required notifications in Liberty's database,[2] and that he advised Claimant of the importance of doing so on a number of occasions. H.T. at 10; C.R. at 108. Specifically, he recounted that Claimant received a verbal warning on May 3, 2018, for "[e]xcessive errors, providing inaccurate information[,] and fail[ing] to make required notifications." *See* H.T. at 10, C.R. at 108; *see also* C.R. at 42 (noting the May 3, 2018 verbal warning). Haines acknowledged that on February 14, 2019, Claimant received her first written warning, documenting numerous instances where, *inter alia*, she failed to copy essential personnel on email assignments; gave incorrect information to investigators, program office contacts, and the Department of Human Services; sent emails containing sensitive information to the wrong parties; and failed to complete the required licensing notifications. *See* H.T. at 10-11, C.R. at 108-09; *see also* C.R. at 38-42 (first Employee Disciplinary Action Plan). The first written warning advised "that further incidents of this nature may result in further discipline, up to and including termination." C.R. at 42. Haines noted that Claimant signed the document. *Id.*; H.T. at 11, C.R. at 109.

Haines then testified that Claimant received a second written warning on May 28, 2019, for "not meeting minimum standards and expectations." *See* H.T. at 11-12, C.R. at 109-10; *see also* C.R. at 34-36 (second Employee Disciplinary Action Plan). This warning detailed several instances where Claimant provided sensitive information to the wrong parties, failed to document pertinent information in files, and failed to make required notifications. C.R. at 34. Haines testified that the second written warning again advised "that further incidents of this nature may

---

[2] We note that Claimant's job required documenting the licensing notifications in Liberty's database to generate reports and contacting "program office contacts" by email. C.R. at 38 (*see* Claimant's first Employee Disciplinary Action Plan, documenting her job duties).

result in further discipline, up to and including termination[,]" and that Claimant signed the document. C.R. at 36; H.T. at 12-13, C.R. at 110-11.

Haines further testified that he discussed Claimant's performance with her a third time in June 2019. H.T. at 13; C.R. at 111. He explained that the incident "result[ing] in [Claimant's] termination was [her] lying about documenting a required licensing notification that was made in [a file in] April [2019], and it was questioned where the documentation for that was." H.T. at 9; C.R. at 107. Upon being told that the licensing notification information was missing from the April file, Claimant responded that she had entered the licensing notification in the April file, but entered it in the wrong section, and that she would move it to the correct section. *Id.* Haines stated that was a lie, as he had already examined the April file and found that the information had not been entered in another section. *Id.* To the contrary, Haines testified that the required licensing notification was not inputted by Claimant until June 2019. *Id.* Haines thus informed Claimant that "the audit system" established she had not inputted the licensing notification in April, though she insisted that she had. H.T. at 13; C.R. at 111. Haines explained the importance of Claimant's misrepresentation in terms of Liberty's operations, stating that Liberty works with state agencies to provide community services for individuals with disabilities and is "required by the law" to generate reports and provide licensing notifications to the state agencies in a timely manner. H.T. at 10; C.R. at 108. After discussing the matter with Claimant in June 2019, Haines advised Claimant that she was going to be terminated and issued a termination report.[3] *See* H.T. at 13; C.R. at 111; *see also* C.R. at 30 (third Employee Disciplinary Action Plan). The termination report advised that Claimant "lied to her direct supervisor, Zac Haines[,] and

---

[3] The report is not signed or dated. *See* C.R. at 30, 32.

5

Madelyn Brown, a member of the Department of Human Services [], concerning documentation of a required licensing notification in the Social Assistance Management System [].” *See* C.R. at 30.

Claimant cross-examined Haines. She questioned his claim that she was informed of the termination. She noted that the termination report did not even contain her signature. Haines responded that he, in fact, brought Claimant into his office and fired her, but she refused to sign the termination report. H.T. at 14; C.R. at 112.

Claimant then testified. She stated that on her last day of work with Liberty, she received a call from Mitchell “saying that I was just -- she didn’t have any other positions for me. That was it.” H.T. at 15; C.R. at 113. Claimant testified that “[t]his conversation regarding the fact that they feel like I lied about where I put something . . . is a lie.” *Id.* She claimed that no one ever brought her into the office to talk to her and that the incident “was never discussed.” *Id.*

Based on the parties’ testimony and other evidence presented, the referee found that Liberty has work rules, protocols, and procedures that employees are required to follow, and specifically, has rules requiring the appropriate and timely documentation of client files. Referee’s 12/10/2019 Decision, F.F. Nos. 4-5. The referee further found that Claimant had received multiple disciplinary warnings stating that she was not complying with Liberty’s directives, and that, despite receiving such warnings, Claimant’s conduct in failing to properly document files continued. *Id.*, F.F. Nos. 6-9. The referee found that in June 2019, Claimant was questioned about missing documentation in a particular file, and later went into Liberty’s system and added the missing information, but advised Haines that she had properly recorded it in the file; it was merely in the wrong section; and “she had

6

simply moved it over." *Id.*, F.F. Nos. 9-11. However, the referee noted that an audit done by Haines prior to confronting Claimant established that the missing information had not been in another section of the file. *Id.*, F.F. No. 12. Thus, on June 26, 2019, Claimant was discharged by Liberty for failing to follow its policies and procedures and for being untruthful regarding the missing documentation. *Id.*, F.F. No. 13.

Based on the above findings, the referee determined that Employer established the existence of work protocols and procedures that Claimant was required to follow and that Claimant was aware of such protocols and procedures, as she had been warned on numerous occasions about her failure to properly follow the rules. Referee's 12/10/2019 Decision at 2. The referee also concluded that Claimant did not establish good cause for her failure to abide by Liberty's rules or show that Liberty's policies were not uniformly enforced or unreasonable under the circumstances. *Id.* Accordingly, the referee reversed the UC Service Center's determination and concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law.

Claimant appealed to the Board,[4] claiming that she never told Haines that she definitely placed the missing documentation in the wrong section of the April file but instead told him she might have put it in the wrong section and would move it to the correct section. C.R. at 130. Further, she again claimed that she was never called to Haines' office to be terminated for lying, and that she was never untruthful while working for Liberty. *Id.* By decision and order dated February 14, 2020, the Board adopted and incorporated the referee's findings of fact and

---

[4] Employer requested permission to file a brief before the Board, which the Board granted. C.R. at 136, 139-61. Claimant requested permission to file a responsive brief to Employer's brief, which the Board also granted. C.R. at 165, 167-68.

conclusions of law and affirmed the referee's decision finding Claimant ineligible for UC benefits under Section 402(e) of the Law without further discussion. C.R. at 170.

Claimant now petitions for review to this Court.[5] She argues that the "Board made an error in [its] decision regarding my unemployment benefits. [The Board] made an incorrect decision because of the lack of evidence and information." Claimant's Brief at 5. The Board responds that Claimant is merely challenging its credibility determinations, and further, that its findings are conclusive on appeal because they are supported by substantial evidence.[6]

We begin with a review of the Law. In UC cases, the Board is the ultimate finder of fact and is empowered to make credibility determinations. *Doyle v. Unemployment Compensation Board of Review*, 58 A.3d 1288, 1291 n.4 (Pa. Cmwlth. 2013). In making credibility determinations, the Board may accept or reject the testimony of any witness in whole or in part. *Id.* When the Board's findings of fact are supported by substantial evidence, which has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, those findings are conclusive on appeal. *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 670 n.3, 671 (Pa. Cmwlth. 2010).

---

[5] This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review*, 637 A.2d 695, 697 (Pa. Cmwlth. 1994).

[6] The Board also points out that Claimant attached a document to her brief that is not contained in the Certified Record in this matter. It is well settled that this Court may not consider extra-record evidence that is not part of the certified record on appeal. *See Umedman v. Unemployment Compensation Board of Review*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012). We therefore do not consider the extra-record evidence (*i.e.*, phone records) attached to Claimant's brief in our review of this matter.

Where willful misconduct is alleged, the initial burden of proof lies with the employer. *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001). Though not defined in the Law, willful misconduct has been interpreted to include: (i) a wanton or willful disregard of the employer's interests; (ii) a deliberate violation of the employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Temple University of the Commonwealth System of Higher Education v. Unemployment Compensation Board of Review*, 772 A.2d 416, 418 (Pa. 2001). Where an employer's allegation of willful misconduct is based on a violation of the employer's work rule, the employer must show that the rule existed, that the rule was reasonable, and that the claimant was aware of the rule and violated it. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). Whether a claimant's actions constitute willful misconduct is a question of law that is fully reviewable by this Court on appeal. *Temple University*, 722 A.2d at 418 n.1.

Additionally, "[a] disregard of rightfully expected standards of behavior has been described as including a knowing falsehood or misrepresentation to an employer by an employee concerning an employee's work." *DeRiggi v. Unemployment Compensation Board of Review*, 856 A.2d 253, 256 (Pa. Cmwlth. 2004) (quoting *Groover v. Unemployment Compensation Board of Review*, 579 A.2d 1017, 1019 (Pa. Cmwlth. 1990)). However, "an employee's dishonesty constitutes a disregard of expected standards of behavior only where the employee's actions are affirmatively deceptive." *Id.* (quoting *Groover*, 579 A.2d at 1019-20). Absent a specific directive from an employer, an employee who merely fails to disclose

9

information to her employer is not guilty of willful misconduct. *DeRiggi*, 856 A.2d at 256.

If the employer meets its burden of showing willful misconduct, the burden shifts to the claimant to show good cause for her conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013). A claimant establishes good cause where her actions are justified or reasonable under the circumstances. *Id.*

Claimant asserts that she did not know she was fired because of missing documentation in the April file until she filed for UC benefits. She claims that in June 2019, Haines emailed her regarding documentation missing from the April file, and she responded that she would check the file and add the information if it was not included. If Haines audited the April file, Claimant asserts, he never told her about it. Claimant believes that Haines fabricated the termination report because Employer and Liberty did not want to be responsible for her UC benefits. Claimant's brief at 7. Claimant additionally argues that she did not properly represent herself at the hearing because she was given wrong information prior to the hearing and was confused. Claimant's brief at 8. Claimant contends that Mitchell informed her that the hearing was happening because no one wanted to pay for her UC benefits and that it was not necessary for Claimant to participate in the hearing.[7]

The Board responds that Claimant is attempting to challenge the Board's credibility determinations. The Board argues that because its findings are supported by substantial evidence, they are conclusive on appeal. Further, according to the Board, Employer established that Claimant committed willful misconduct, as Liberty had a policy requiring that certain information be properly and timely

_____

[7] We note that Claimant did not express confusion at the hearing or suggest that she was misled by Mitchell.

10

documented in its files, and that Claimant was aware of that policy, as she was disciplined for not properly following it. The Board points out that when Haines was made aware that Claimant had failed to properly document another file, he questioned her about it, but she claimed the information was not missing; it was merely in another section of the file. Haines stated this was a lie because an audit of the file established Claimant did not input the information until June 2019, after he informed her of the error. The Board credited Haines' testimony as to Claimant's conduct, which was its prerogative.

As outlined above, when considering a work rule violation, Employer has the burden of establishing the existence of a rule, the reasonableness of the rule, and Claimant's knowledge of the rule. *Henderson*, 77 A.3d at 719. Here, Employer established that Claimant was required, by Liberty's policies and procedures, to appropriately and timely document licensing notifications in Liberty's database. Employer established that such policies and procedures were reasonable because Liberty is "required by the law" to generate reports and provide licensing notifications to state agencies in a timely manner as part of its day-to-day operations. *See* H.T. at 10; C.R. at 108. Employer further established that Claimant had knowledge of such policies and procedures, as she had received one verbal warning and two written warnings based on her failure to properly follow those policies and procedures. As such, we conclude that Employer met its burden of establishing a work rule violation.[8]

However, Claimant was not terminated because she violated a rule. Haines testified that Claimant was terminated because she lied in that when confronted about her failure to properly document the April 2019 file, she claimed

---

[8] Claimant presented no evidence of good cause for her failure to follow the rule.

11

that the information was included in the file, but in the wrong location, and that she just needed to move it to the proper section. At the hearing, however, Claimant denied that she lied or that anyone told her that she was discharged for lying. In her appeal to the Board, she addressed the issue with the April file, claiming that she did not say that the missing information was placed in the wrong section. C.R. at 130. Instead, she said that it might be in the wrong section and she would double check. *Id.* In her brief to this Court, however, she states that her discussion with Haines regarding the April file was via email. Claimant's brief at 7. Haines asked her about missing information in the file, and she responded that she would check the file and put the information in, if it was not there. *Id.*

We agree with the Board that the issue before us is one of credibility. Claimant was fired for lying to her supervisor. This requires a knowing falsehood or misrepresentation by Claimant on an issue concerning her work. *DeRiggi*, 856 A.2d at 256. Haines testified that when confronted about yet another failure to document a licensing notification in a file, Claimant asserted that she had properly documented the file, but it was in the wrong section. Haines claimed that he checked the file, and the "audit system" established that the licensing notification was not in the file, as suggested by Claimant.

Haines' testimony, which the Board credited, is sufficient to show that Claimant affirmatively acted to deceive him in order to cover up her failure to properly document the file. As such, Employer has established that Claimant disregarded a standard of behavior that Employer had every right to expect from its employee. Thus, Employer met its burden of showing that Claimant's dishonesty constituted willful misconduct under these circumstances such that UC benefits must be denied.

12

For the above reasons, the order of the Board is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherie Arias,                          :
                                       :
                    Petitioner         :
                                       :
          v.                           : No. 251 C.D. 2020
Unemployment Compensation              :
Board of Review,                       :
                                       :
                    Respondent         :

# **O R D E R**

AND NOW, this 10<u>th</u> day of <u>February</u>, 2022, the order of the Unemployment Compensation Board of Review, dated February 14, 2020, is hereby AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge